**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION**

UNITED STATES OF AMERICA,        :
                                 :
v.                               :
                                 :        CASE NO.: 7:24-CR-31 (WLS-ALS)
PORTERFIELD STOKES,              :
                                 :
        Defendant.               :
_____  :

**ORDER**

On March 25, 2026, the Court held a sentencing hearing in the above-captioned case. At the hearing, the Court ruled on objections filed by Defendant Porterfield Stokes. The Court issues this Order memorializing that hearing and the Court's ruling on Defendant's objection.

## I.   PROCEDURAL BACKGROUND

On August 14, 2024, Defendant was charged in a one-count Indictment (Doc. 1) with Possession of a Firearm by a Convicted Felon, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(8), and 924(e). The Indictment contained a Notice of Qualifying Conviction Under 18 U.S.C. § 924(e), which listed four of Defendant's previous convictions that might serve to designate him as an armed career criminal. (Doc. 1 at 3). On May 1, 2025, Defendant pleaded guilty to count one of the Indictment. (Docs. 69 & 70).

A draft presentence investigation report was filed on June 12, 2025. (Doc. 72). The draft report increased Defendant's offense level, pursuant U.S.S.G. § 4B1.1(b)(3)(B), based on Defendant's prior felony convictions which designated him as an armed career criminal under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). The convictions at issue included: (1) Possession of Cocaine with Intent to Distribute, Lowndes County Superior Court, Dkt. No.: 88CR053; (2) Aggravated Assault with a Deadly Weapon (Knife) in Lowndes County Superior Court, Dkt. No. 96CR715; (3) Possession with Intent to Distribute Cocaine, Lowndes County Superior Court, Dkt. No.: 03CR741; and (4) Possession with Intent to Distribute Marijuana, Lowndes County Superior Court, Dkt. No.: 2018CR0898. (Doc. 72 ¶ 20).

1

Defendant objected to the report and the Chapter Four Enhancement designating him as an armed career criminal on June 23, 2025, arguing that his convictions for possession with intent to distribute marijuana and possession with intent to distribute cocaine did not qualify as predicate offenses for an armed career criminal designation under the categorical approach. (Doc. 74). The Government filed a response in opposition to Defendant's objection on July 1, 2025. (Doc. 75).

The sentencing hearing in this case was originally held on November 19, 2025. However, the Court *sua sponte* continued the hearing in light of the Eleventh Circuit's recent ruling in *United States v. Jerome Miller, Jr.*, No. 23-13069 (11th Cir. Nov. 6, 2025). The Court provided the Parties with the opportunity to submit supplemental briefing on how *Miller* may affect Defendant's sentencing. (Doc. 83). Neither Party submitted a supplement.

The final sentencing hearing was held on March 25, 2026. The Court heard argument from the Parties on the applicability of the *Miller* decision to Defendant's prior convictions. The Government clarified that it did not intend to rely on the Possession of Cocaine with Intent to Distribute, Lowndes County Superior Court, Dkt. No.: 88CR053 conviction as a predicate offense. And Defendant did not object, in his briefing or at the hearing, to the use of the Aggravated Assault with a Deadly Weapon (Knife) in Lowndes County Superior Court, Dkt. No. 96CR715 conviction for ACCA purposes. This left the Court to determine whether the remaining convictions, Possession with Intent to Distribute Cocaine, Lowndes County Superior Court, Dkt. No.: 03CR741 and Possession with Intent to Distribute Marijuana, Lowndes County Superior Court, Dkt. No.: 2018CR089, qualified as predicate offenses.

## II.  RELEVANT LAW AND THE COURT'S RULINGS

A defendant who violates § 922(g) faces an enhanced penalty range under ACCA if he "has three previous convictions . . . for a violent felony or a serious drug offense, or both, committed on occasions different from one another." § 924(e)(1). Under ACCA, a serious drug offense includes "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. [§] 802)), for which a maximum term of imprisonment of ten years or more is prescribed by law." 18 U.S.C. § 924(e)(2)(A)(ii). Whether conduct involves a controlled substance is determined by using the categorial

approach. *See United States v. Jackson*, 55 F.4th 846, 850 (11th Cir. 2022), *aff'd sub nom. Brown v. United States*, 602 U.S. 101 (2024). Under the categorial approach, "a state conviction cannot serve as an ACCA predicate offense if the state law under which the conviction occurred is categorically broader—that is, if it punishes more conduct—than ACCA's definition of a 'serious drug offense.'" *Id.* It is well settled that, when conducting an analysis under the categorical approach, the Court must look to "the version of state law that the defendant was actually convicted of violating[,]" *Jackson*, 55 F.4th at 850 (citing *McNeill v. United States*, 563 U.S. 816, 821 (2011)), and the federal drug schedules in place "at the time of that offense." *Brown v. United States*, 602 U.S. 101, 123 (2024).

In *Miller*, the Eleventh Circuit encountered a more nuanced question: "what happens when there is a change in state law between the defendant's commission of the state offense and his conviction?" *Miller*, No. 23-13069 at 21. There, the defendant's prior state law cocaine convictions were committed in February and March of 2017, at a time when state law treated ioflupane as a type of cocaine, while federal law did not, thus creating a categorical mismatch between state and federal law. *Id.* at 25. By the time the defendant was convicted in August of 2017, the state law had changed to legalize ioflupane, making it a categorical match to federal law. *Id.* The court concluded that when there is an intervening change in state law between the commission and conviction of the offense, the sentencing court must determine "whether, under state law, the change would apply to the offense." *Id.* at 24. Because most states have adopted a general saving provision, either in a general savings statute or in the state's constitution, in most cases, the sentencing court will use the version of the state law in effect when the defendant committed the state offense. *Id.* at 24–25. "[T]his will not be so if the state law changed between when the defendant committed the offense and when he was convicted of it, the change narrowed state law, and state law has no saving provision." *Id.* at 25, n.12.

Here, for Defendant's conviction of Possession with Intent to Distribute Marijuana, the Court determined that there was an intervening change in both state law and federal law between the time Defendant committed the offense and the time he was convicted. Defendant committed the offense on January 10, 2018. (Doc. 81 ¶ 37). On that date, Georgia law defined marijuana as:

3

> "Marijuana" means all parts of the plant of the genus Cannabis, whether growing or not, the seeds thereof, the resin extracted from any part of such plant, and every compound, manufacture, salt, derivative, mixture, or preparation of such plant, its seeds, or resin; but shall not include samples as described in subparagraph (P) of paragraph (3) of Code Section 16-13-25 and shall not include the completely defoliated mature stalks of such plant, fiber produced from such stalks, oil, or cake, or the completely sterilized samples of seeds of the plant which are incapable of germination.

O.C.G.A. § 16-13-21(16) (effective March 13, 2015 to May 9, 2019). On January 10, 2018, federal law defined marijuana as:

> The term "marihuana" means all parts of the plant Cannabis sativa L., whether growing or not; the seeds thereof; the resin extracted from any part of such plant; and every compound, manufacture, salt, derivative, mixture, or preparation of such plant, its seeds or resin. Such term does not include the mature stalks of such plant, fiber produced from such stalks, oil or cake made from the seeds of such plant, any other compound, manufacture, salt, derivative, mixture, or preparation of such mature stalks (except the resin extracted therefrom), fiber, oil, or cake, or the sterilized seed of such plant which is incapable of germination.

21 U.S.C. § 802(16) (effective July 22, 2016 to October 23, 2018). Importantly, both the state and federal definitions of marijuana included hemp on January 10, 2018.

Defendant was convicted on October 3, 2019. (Doc. 81 ¶ 37). On December 20, 2018, the Agriculture Improvement Act (Farm Act) amended the federal definition of marijuana to expressly exclude cannabis with less than .3% THC, i.e. hemp. Thus, on October 3, 2019, federal law defined marijuana as:

> Subject to subparagraph (B), the term "marihuana" means all parts of the plant Cannabis sativa L., whether growing or not; the seeds thereof; the resin extracted from any part of such plant; and every compound, manufacture, salt, derivative, mixture, or preparation of such plant, its seeds or resin.
>
> The term "marihuana" does not include--
>
> (i) hemp, as defined in section 1639o of Title 7; or
>
> (ii) the mature stalks of such plant, fiber produced from such stalks, oil or cake made from the seeds of such plant, any other compound, manufacture, salt, derivative, mixture, or preparation of such mature stalks (except the resin extracted therefrom), fiber, oil, or cake, or the sterilized seed of such plant which is incapable of germination.

4

21 U.S.C. § 802(16) (effective December 21, 2018 to December 1, 2022). Then, on May 10, 2019, the Georgia definition was also amended to expressly exclude hemp. So, on October 3, 2019, Georgia law defined marijuana as:

> "Marijuana" means all parts of the plant of the genus Cannabis, whether growing or not, the seeds thereof, the resin extracted from any part of such plant, and every compound, manufacture, salt, derivative, mixture, or preparation of such plant, its seeds, or resin, but shall not include samples as described in subparagraph (P) of paragraph (3) of Code Section 16-13-25; shall not include the completely defoliated mature stalks of such plant, fiber produced from such stalks, oil, or cake, or the completely sterilized samples of seeds of the plant which are incapable of germination; **and shall not include hemp or hemp products** as such terms are defined in Code Section 2-23-3.

O.C.G.A. § 16-13-21(16) (effective May 10, 2019 to June 30, 2021) (emphasis added). This means that on the date of conviction both federal and state law defined marijuana the same, as both excluded hemp. Therefore, the Court overruled Defendant's objection, finding that there was no mismatch between the state and federal definitions of marijuana either at the time of commission or at the time of conviction. Because there was no mismatch at either relevant date, the Court did not reach the ultimate question in *Miller* regarding which version of state law to apply.

As to Defendant's conviction for Possession with Intent to Distribute Cocaine, Defendant argued that because ioflupane was removed from the federal drug schedules in 2015, his state conviction is overbroad and does not qualify as predicate offense under ACCA. (Doc. 74 at 8). The Court found Defendant's argument to be misplaced because the Court is required to "consult the version of the federal drug schedules in effect when the defendant committed his underlying state offense[.]" *Miller*, No. 23-13069 at 21 (citing *Brown*, 602 U.S. at 123). Defendant committed the offense on May 2, 2003, and was convicted on November 5, 2003. (Doc. 81 ¶ 34). On both relevant dates, Georgia law and federal law defined cocaine to include ioflupane. *See* O.C.G.A. § 16-13-26(D)(1) (effective 2003 through 2004); 21 U.S.C. § 802(17)(D)–(E) (effective 2003 through 2004). There was no intervening change in either law between the time of commission and the time of conviction. Thus, using the categorical approach, the Court found that there was no mismatch between state and federal law and overruled Defendant's objection.

Having overruled Defendant's objections, the Court found that both convictions qualified as serious drug offenses under ACCA. Together with Defendant's prior conviction for Aggravated Assault with a Deadly Weapon, the Court found that Defendant had at least three prior convictions for a violent felony or serious drug offense, or both, committed on occasions different from one another, and thus, the Chapter Four Enhancement designating Defendant as an armed career criminal was properly applied. No issue or objection was raised as to whether each offense subjected Defendant to a penalty of fifteen years. Applying the enhancement, the Court determined Defendant's U.S. Sentencing Guidelines range to be 180 to 210 months based upon a total offense level of 31 and a criminal history category of V. The Court sentenced Defendant to a term of imprisonment of 180 months to be followed by a period of supervised release of five years.

**SO ORDERED**, this 2nd day of April 2026.

**/s/ W. Louis Sands**
**W. LOUIS SANDS, SR. JUDGE**
**UNITED STATES DISTRICT COURT**